**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON**

**FRANKLIN SHAYNE SHAMBLEN,**

      **Plaintiff,**

**v.**                                    **Case No. 2:14-cv-24610**

**CHASE FRAGALE, et al,,**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court are the defendants' renewed Motions to Dismiss (ECF Nos. 56 and 59).[1] For the reasons stated herein, the undersigned proposes that the presiding District Judge **GRANT** the defendants' Motions to Dismiss (ECF Nos. 56 and 59) and dismiss this matter from the docket of the court.

## PROCEDURAL HISTORY

On August 12, 2014, the plaintiff filed a Complaint against various correctional staff at the Parkersburg Correctional Center and a hearing officer at the St. Marys Correctional Center concerning a disciplinary action taken against the plaintiff based

---

[1] The undersigned notes that the defendants filed previous Motions to Dismiss (ECF Nos. 33 and 35) based upon insufficient service of process. On June 14, 2017, the undersigned recommended that those motions be denied as moot in light of the acceptance or waiver of service by each of the defendants. The undersigned's Proposed Findings and Recommendation (ECF No. 66) is pending before the District Court.

upon disputed test results for drugs or intoxicants.  Specifically, the Complaint alleges that, while incarcerated at the Parkersburg Correctional Center, the plaintiff was subjected to a random urinalysis screening.  (ECF No. 1 at 3).  The plaintiff further alleges that the West Virginia Division of Corrections uses a two-step urinalysis testing procedure, with a Step 1 field test, followed by a Step 2 "analytical/confirmation test" which is only administered if the first test is positive or inconclusive.  (*Id.* at 4).  The plaintiff contends that his Step 1 urinalysis was negative, but defendant Chase Fragale noted that it was inconclusive.  (*Id.* at 3-5).  Thus, a Step 2 urinalysis was conducted, which the plaintiff alleges was also negative.  (*Id.* at 4-5).  The plaintiff further alleges that he was also given a breathalyzer, which was negative.  (*Id.* at 3).

Nevertheless, according to the Complaint, the plaintiff was subsequently charged with a Class I rule violation for use and possession of drugs and intoxicants, and was taken before a Correctional Hearing Officer on May 16, 2014.  (*Id.* at 5).  The plaintiff further alleges that, on May 23, 2014, he received a hearing report finding him guilty of the rule violation.  (*Id.*)  As a result, he received 60 days of punitive segregation and 60 days of loss of privileges.  (*Id.*)  However, those sanctions were suspended and he was placed on 180 days of probation.  (*Id.*)  Furthermore, the plaintiff did not lose any good conduct time.  The plaintiff further alleges, however, that, as a result of the guilty finding, he was transferred to a more secure facility, his classification level was raised, his recommended programming was interrupted, he lost wages, and his opportunity to be released on parole was jeopardized.  (*Id.*)  He further claims that he and his family suffered mental anguish. (*Id.*)

In addition to the allegations against defendant Fragale concerning the false test results and write up, the plaintiff alleges additional claims against defendants Gary

McDonald, Aaron Simonton, Paul Gordon, Keith Butcher, Russell Matson and Ann Thomas.  Specifically, the plaintiff alleges as follows:

### Corp. Gary McDonald, Shift Commander/Supervising Officer of Fragale

"Corp. McDonald harmed me in failing to do something he should have done or was aware of someone's conduct in which [sic] harmed me and or went along with said conduct in some way."

### Lt. Aaron Simonton, Chief of Security

"Lt. Simonton reviewed the incident report and was aware of the infractions committed by Defendant #1 [Fragale] and went along with said infractions by making the final decision to charge me with a rule violation."

### Paul Gordon, Correctional Hearing Officer

"Mr. Gordon conducted the disciplinary hearing in which the facts were presented; negative drug screen, negative breathalyzer and negative toxicology report though still returned a guilty verdict for use of drugs & intoxicants.  Further Mr. Gordon was aware of Defendants 1, 2 & 3's [Fragale, McDonald and Simonton] infractions and went along with it."

### Keith Butcher, Unit Manager

"The situation was brought to Mr. Butcher's attention through inmate grievance procedure.  Mr. Butcher failed or refused to address the situation stating such issues are to be availed through the appeals process even though the relief sought in the grievance was for those involved to be held accountable for their actions, never was it asked that the finding of guilt be reversed in the grievance."

### Russell Maston [sic; Matson], Deputy Warden

"Deputy Warden was forwarded the inmate grievance at the 2nd level in which & when upheld the decision of Defendant # 5 [Butcher]."

### Anne Thomas, Warden

"Ms. Thomas reviewed the situation, was aware of the conduct of those under her supervision and upheld their actions and or approved of such! Ms. Thomas failed or refused to perform a duty required of her which caused me harm."

(ECF No. 1 at 6-7).  The "Relief" section of the plaintiff's Complaint seeks "termination of defendants' employment" and "compensation in the amount of ten(s) of thousand(s) of dollars."  (*Id.* at 4).

On May 22, 2017, defendants McDonald, Simonton, Gordon, Butcher, Matson and Thomas filed a Motion to Dismiss (ECF No. 56) and Memorandum of Law in support thereof (ECF No. 57) alleging that this federal court lacks subject matter jurisdiction over the plaintiff's Complaint because it fails to state any federal claim and there is no diversity of citizenship to support federal jurisdiction on that basis.  Their motion documents further assert that the Complaint fails to state any actionable claims under either the Eighth or Fourteenth Amendments to the United States Constitution and, thus, they are entitled to qualified immunity.

On May 26, 2017, defendant Fragale filed a similar Motion to Dismiss (ECF No. 59) and Memorandum of Law in support thereof (ECF No. 60).  Notably, defendant Fragale's Memorandum of Law indicates that the plaintiff appealed his disciplinary findings and, on July 25, 2014, West Virginia Division of Corrections Commissioner Jim Rubenstein granted the plaintiff's disciplinary appeal, overturned the guilty verdict, vacated the plaintiff's punishment, and expunged the charge from the plaintiff's institutional record.  (ECF No. 60 at 8).

On June 21, 2017, the plaintiff filed a "Reply Brief to the Government's Response Motion under 28 U.S.C. § 1331/Bivens Action – Individual and Official Capacities – Jury Trial/Punitive Damages Sought" (ECF No. 68) (hereinafter "the plaintiff's Response").  The plaintiff's Response clarifies that he has brought his claims against the defendants in both their individual and official capacities, and that he is alleging a violation of his federal

constitutional rights.[2]  The plaintiff's Response further addresses his belief that he is entitled to punitive damages.  Finally, the plaintiff's Response states that he is willing to engage in settlement negotiations and appears to request that the parties enter into "arbitration."[3]

As to the merits of his claims, the plaintiff's Response asserts that the defendants failed to comply with WVDOC policies with respect to negative drug testing when they administered the second test and thus, the disciplinary hearing never should have occurred.  The plaintiff's Response further appears to assert that there was insufficient evidence to support the guilty finding and, thus, the hearing officer violated the plaintiff's due process rights by knowingly relying on false evidence.  The plaintiff further asserts that the defendants are not entitled to qualified immunity because it is evident that the conduct of the defendants violated his clearly-established constitutional rights.

The defendants did not file reply briefs.  This matter is ripe for adjudication.

---

[2]  The plaintiff's Response refers to a "Bivens Action."  In *Bivens v. Six Unknown Named Fed. Officers of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court established an avenue for pursuit of monetary relief against individual federal employees for federal constitutional violations.  All of the defendants herein are employees of a state government agency, and are not federal employees.  Accordingly, they were acting under color of state law and would be liable, if at all, for violations of the plaintiff's federal constitutional rights under 42 U.S.C. § 1983, not *Bivens*.  Nevertheless, the undersigned believes that the District Court must liberally construe the plaintiff's allegations to be asserting violations of his federal constitutional rights, actionable under 42 U.S.C. § 1983, which gives rise to federal jurisdiction under 28 U.S.C. § 1331.  The plaintiff's Response further asserts that he is seeking more than the $75,000 threshold necessary to establish diversity jurisdiction under 28 U.S.C. § 1332; however, he ignores the fact that such jurisdiction is not satisfied because he and all of the defendants are residents of West Virginia.

[3]  It is unclear whether the plaintiff is truly requesting that the parties engage in "arbitration," which generally involves a "trial-like" proceeding resulting in a binding decision by an "arbitrator," or whether the plaintiff is indicating his willingness to engage in mediation in an effort to settle this matter without further court proceedings.  Regardless, other than to facilitate the mediation of this matter, this court cannot force the parties to engage in arbitration or settlement of this matter.  Moreover, because the Complaint fails to state a claim upon which relief can be granted, the undersigned is recommending that this civil action be dismissed.

## STANDARD OF REVIEW

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints.   However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case.  The Court wrote:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted).  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556. *
> * *
>        In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678-679.

## ANALYSIS

I.    **The Supervisory Defendants' Motion to Dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction should be denied.**

Defendants McDonald, Simonton, Gordon, Butcher, Matson and Thomas (hereinafter "the Supervisory Defendants") have moved to dismiss the Complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the basis that the Complaint does not sufficiently allege any federal claims or that there is proper diversity of citizenship to justify jurisdiction on that basis. Section 1331 of Title 28 of the United States Code provides that "the district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The district court also has jurisdiction over controversies in which the parties are citizens of different states and where the amount in controversy exceeds $75,000. This basis for jurisdiction is known as "diversity of citizenship." 28 U.S.C. § 1332. The plaintiff's Complaint does not specifically invoke either basis for subject matter jurisdiction.

As noted previously herein, the plaintiff cannot meet the requirements for diversity of citizenship jurisdiction, as he and all of the defendants appear to be citizens of the State of West Virginia. Turning, instead, to whether the plaintiff has properly alleged a claim grounded in the Constitution, laws or treaties of the United States, the Supervisory Defendants correctly assert that the Complaint does not specifically assert any violation of the plaintiff's federal constitutional rights or any federal statute. Rather, the Complaint only refers to "the negligence actions" of the defendants. (ECF No. 1 at 5). However, based upon a liberal reading of the allegations in the Complaint, and the plaintiff's representations in his Response and at a status conference before the undersigned on April 18, 2017, it is apparent that the plaintiff is alleging that the conduct of the defendants

7

violated his federal constitutional rights, particularly his right to due process of law. (ECF Nos. 1 and 68).

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that, liberally construed, the plaintiff's Complaint alleges a violation of his federal constitutional rights sufficient to establish federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and there is no basis for dismissal under Rule 12(b)(1).

## II.    The Complaint should be construed to be alleging claims against the defendants in both their individual and official capacities.

The Complaint does not specify whether the plaintiff is suing the defendants in their individual or official capacities, or both. In such cases, courts in this circuit follow the "course of proceedings" test to determine the capacity in which an official is being sued. *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995). Under that test, "the court must examine the nature of the plaintiff's claims, the relief sought and the course of the proceedings to determine whether a state official is being sued in a personal capacity." *Id.* Relevant factors include: (1) whether the plaintiff fails to allege that the defendants' actions were "in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the face of the complaint[;]" (2) whether the plaintiff seeks compensatory or punitive damages (which are unavailable in official capacity suits); and (3) "the nature of any defenses raised in response to the complaint. . . ." *Id.* Furthermore, "because qualified immunity is available only in a personal capacity suit, the assertion of that defense indicates that the defendant interpreted the plaintiff's action as being against him personally." *Id.* (citations omitted). Finally, courts should keep in mind "whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." *Id.*

The defendants' Memorandum of Law notes that the Fourth Circuit further discussed the significance of the *Biggs* factors in *Foreman v. Griffith*, stating:

> With respect to assessing the nature of a plaintiff's claim or claims, the *Biggs* court stated that the plaintiff's failure to allege that the defendants acted in accordance with a governmental policy or custom or the lack of indicia of such a policy or custom on the face of the complaint indicates that a state actor has been sued in his individual capacity. [66 F.3d] at 61. With respect to the nature of the relief sought, the *Biggs* court also stated that the plaintiff's request for compensatory or punitive damages indicates an individual capacity suit since such relief is unavailable in official capacity suits. *Id.* Finally, with respect to the course of proceedings, the *Biggs* court stated that the defendant's assertion of qualified immunity as a defense indicates an individual capacity suit, since such a defense is only available in individual capacity suits.

81 F. App'x 432, 435 (4th Cir. 2003). (ECF No. 15 at 5).

The plaintiff has named each defendant by name and employment position, which evidences an intent to name them in their official capacities. (*Id.* at 4). Furthermore, the plaintiff is clearly challenging the conduct of the defendants in relation to an official prison policy directive and he seeks declaratory and injunctive relief related to that policy. However, he also seeks monetary damages, which, as addressed below, may only be pursued against state officials in their individual or personal capacities. Moreover, the defendants have asserted a qualified immunity defense, which demonstrates their interpretation that the plaintiff's claims are brought, at least in part, against the defendants in their individual or personal capacities. Thus, the undersigned proposes that the presiding District Judge **FIND** that the Complaint is brought against the defendants in both their official and individual capacities. The undersigned will address each type of claim and the defendants' defenses thereto herein.

### III.    The plaintiff's official capacity claims.

Section 1983 of Title 42 of the United States Code provides in pertinent part that:

> Every person who under color of any statute, ordinance, regulation, custom or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States], shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Section 1983 is not, in and of itself, a source of substantive rights; rather, it merely provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  Thus, a plaintiff must allege both a violation of a right secured by the Constitution or laws of the United States and that a person acting under color of state law committed the alleged violation.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011).

Defendant Fragale has moved, *inter alia*, to dismiss the Complaint because, in his official capacity, he is not a "person" under 42 U.S.C. § 1983.  (ECF No. 60 at 9-10).  To the extent that the plaintiff has brought claims against all of the defendants in their official capacities, his claims for monetary damages cannot survive because, neither a state, nor its officials acting in their official capacities, are "persons" under the civil rights statutes and because the Eleventh Amendment bars such recovery.

In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court stated:

> Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself.  We see no reason to adopt a different rule in the

present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.

We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.  The judgment of the Michigan Supreme Court is affirmed.  [Citations omitted].

Furthermore, pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state.  *Hans v. Louisiana*, 134 U.S. 1, 9 (1980).  Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose monetary liability upon a State or State officials, which may be paid from public funds in the state treasury.  *Quern v. Jordan*, 440 U.S. 332, 337 (1979).  Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment.  *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984).

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that all of the defendants are immune from liability for monetary damages in their official capacities under the Eleventh Amendment and, in their official capacities, are not persons who can be sued under 42 U.S.C. § 1983.  Accordingly, such claims must be dismissed.[4]

---

[4]  The plaintiff also seeks injunctive relief in the form of the termination of the defendants' employment, which is not relief that this court is authorized to grant.

IV.    **The plaintiff's individual capacity claims.**

A.    **Federal constitutional claims**

Documents filed by *pro se* plaintiffs are held to a less stringent standard than those drafted by attorneys and, therefore, are construed liberally; however, the court may not act as an advocate for the *pro se* plaintiff.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also Weller v. Department of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Here, the plaintiff has essentially alleged that a false disciplinary charge was filed against him by defendant Fragale, which was upheld or ratified by the remaining defendants. Although the plaintiff has not alleged the violation of any specific federal constitutional right or law, liberally construing the Complaint, the undersigned believes that the plaintiff is attempting to assert, either a due process claim under the Fourteenth Amendment related to his prison discipline, or a claim under the Eighth Amendment concerning cruel and unusual punishment.  The Complaint also specifically alleges that the defendants' conduct was "negligent."  The undersigned will address each type of claim in turn.

1.    *Due process claims*

The Due Process Clause of the Fourteenth Amendment of the United States Constitution prohibits a State from depriving "any person of life, liberty, or property, without due process of law."  The only interest potentially implicated in this matter would be a liberty interest.  However, as a result of his conviction and imprisonment, the plaintiff's protected liberty interests are significantly reduced.

Prisoners charged with institutional rules violations are entitled to rights under the Due Process Clause only when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest.  As noted by the Supreme Court in *Sandin v. Conner*, "the Due Process Clause does not protect every change in the

conditions of confinement having a substantial adverse impact on the prisoner" and "the Due Process Clause did not itself create a liberty interest to be free from intrastate prison transfers."  515 U.S. 472, 478 (1995) (citing *Meachum v. Fano*, 427 U.S. 215 (1976)).  In the prison context, a liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 484.  In *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997), the United States Court of Appeals for the Fourth Circuit reiterated that, "[i]n order to prevail on either a procedural or substantive due process claim, inmates must first demonstrate that they were deprived of life, liberty, or property" by governmental action.

Following the reasoning of the Supreme Court in *Sandin*, the undersigned finds no liberty interest implicated in the decisions of prison staff surrounding the plaintiff's disciplinary proceedings.  The plaintiff did not suffer the loss of good conduct time, or any sanction resulting in a direct change in the length or duration of his overall confinement.[5] Nor can he demonstrate that his sanctions, which were suspended, and ultimately reversed, with the charge expunged, created an atypical and significant hardship compared to ordinary prison life.

Moreover, the Supreme Court has specifically held that a prisoner has no liberty interest in being housed in any particular prison facility.  *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Meachum v. Fano*, 427 U.S. 215 (1976).  Thus, the plaintiff's allegation that he was transferred to a more secure facility does not establish the requisite liberty interest.  Likewise, to the extent that

--------

[5]  Moreover, the plaintiff's statement that his opportunity to be released on parole has been jeopardized is entirely speculative and there is no federal constitutional right to parole.  *See Greenholtz v. Neb. Penal Inmates*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.")

the plaintiff has alleged that he "lost wages" and had his classification level raised, the Fourth Circuit has held that classifications and work assignments are matters within in the discretion of prison administrators and are not within the reach of the protections of the Due Process Clause. *See Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978); *Robinson v. Creasey*, No. 5:07-cv-00347, 2009 WL 1073642 (S.D. W.Va. Apr. 21, 2009) (Johnston, J.) (finding that discontinuation of employment did not amount to a liberty interest protected by the Due Process Clause).

Thus, the plaintiff cannot establish any liberty interest in order to assert a cognizable procedural or substantive due process claim. *See Wolff v. McDonnell*, 418 U.S. 539 (1974). "Since Plaintiff was not deprived of a protected liberty interest, this Court need not reach the question of what process was due and if Plaintiff received those due process protections." *Whitfield v. Thompson*, No. 13-22379, 2016 WL 1169253 at *14-15 (S.D. Fla. Feb. 25, 2016).

Nevertheless, even if the plaintiff could establish a sufficient liberty interest that would give rise to due process protections, it appears that he received all of the process he was due and ultimately had his disciplinary findings overturned and his record expunged. Thus, he cannot demonstrate any violation of his due process rights or any injury therefrom. As noted by defendant Fragale, "Plaintiff was granted numerous procedural safe guards throughout the process, comprising the basis for his Complaint." (ECF No. 60 at 6). Likewise, the Supervisory Defendants' Memorandum of Law asserts that the plaintiff had the opportunity to appeal the decision of the administrative hearing and did so.[6]

---

[6] The undersigned notes that the Supervisory Defendants' Memorandum suggests that the appeal was unsuccessful, which contradicts the statements in defendant Fragale's Memorandum of Law. The

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that, to the extent that the Complaint can be liberally construed to be asserting a violation of the plaintiff's due process rights under the Fourteenth Amendment, his Complaint fails to state a claim upon which relief can be granted.

### 2.    *Eighth Amendment claims*

To the extent that the Complaint could also be liberally construed to be asserting a violation of the Eighth Amendment's guarantee against cruel and unusual punishment, the undersigned also proposes that the presiding District Judge **FIND** that the Complaint fails to state a claim upon which relief can be granted against any of the defendants on that basis.  In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  This is a low standard.  The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'"  *Id.* at 833.

"An inmate's Eighth Amendment claim involves a subjective component and an objective component."  *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008); *see also Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) ("Determination of whether the Eighth Amendment has been violated requires analysis of subjective and objective components.") (citing *Wilson v. Seiter*, 501 U.S. 294, 302 (1991)).  "Specifically, Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation

---

undersigned further notes that the Complaint, itself, despite being filed after the alleged reversal of the disciplinary finding by the Commissioner, is silent as to the results of the disciplinary appeal process.

suffered or injury inflicted on the inmate was sufficiently serious (objective component)."
*Williams*, 77 F.3d at 761; *see also Wilson*, *supra*, 501 U.S. 294 (Prisoner claiming that his
conditions of confinement violate the Eighth Amendment must show that prison officials
had a culpable state of mind).   Negligent conduct does not rise to the level of a
constitutional deprivation.  *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987).

Here, the defendants assert that the plaintiff has not alleged or demonstrated that
the circumstances surrounding his disciplinary charge and the conditions of confinement
to which he was subjected resulted in any serious deprivation sufficient to be considered
cruel and unusual punishment.   Defendant Fragale addresses any proposed Eighth
Amendment claim against him as follows:

> In his Complaint, Plaintiff merely alleges that this Defendant noted
> Plaintiff's drug test results were inconclusive rather than negative.  Such
> actions, even if true, cannot give rise to a Constitutional violation because
> they are not sufficiently serious.  Further, such allegations, even if accepted
> as true, do not evidence a deliberate indifference on the part of this
> Defendant.

> This Defendant's alleged actions of noting the results of Plaintiff's
> urinalysis test as inconclusive were but one of a multistep process.  Thus,
> this Defendant's actions were not objectively sufficiently serious because
> they only made up the first step in the process regarding Plaintiff's drug
> testing issues and were in no way a final judgment.  Even if this Defendant
> had unilaterally failed Plaintiff's drug test and took away Plaintiff's
> opportunity for an appeal, Plaintiff's allegations still would not have risen
> to the level of a Constitutional violation because such actions would be
> related to punishment for alleged drug use.  However, in this case, this
> Defendant's actions were followed by another round of testing of Plaintiff's
> urine, which was then followed by an appeal process.  Thus, this Defendant's
> actions were not objectively, sufficiently serious.

(ECF No. 60 at 5-6).  The Supervisory Defendants further assert that the Complaint does
not allege that they acted with the requisite subjective intent.   (ECF No. 57 at 13-14).
Accordingly, all of the defendants assert that the plaintiff cannot establish either the
objective or subjective components of an Eighth Amendment claim.

16

Neither the Complaint, nor the plaintiff's Response to the defendants' Motions to Dismiss, indicates that the plaintiff is pursuing an Eighth Amendment claim against any of the defendants.  Rather, the plaintiff only specifically mentions a violation of his due process rights.  Nevertheless, to the extent that the Complaint could be construed to be raising any Eighth Amendment claims, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has failed to sufficiently allege facts to establish either the objective or subjective components necessary to support such a claim.  Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the Complaint fails to state any claim upon which relief can be granted under the Eighth Amendment.

### 3. *Supervisory liability claims and qualified immunity*

The plaintiff's claims against the defendants, other than Chase Fragale, appear to be alleging that, in their roles as supervisors, they were aware of the alleged "infractions" of defendant Fragale, and failed or refused to take action and essentially "went along with" Fragale's conduct.    (ECF No. 1 at 6-7).  Furthermore, the claims alleged against defendants Butcher, Matson and Thomas simply allege that, through the inmate grievance process, they addressed and upheld a finding that the plaintiff must pursue relief through the established disciplinary appeal process and failed to address his request that the involved employees be held accountable for their actions.  (*Id.*)  However, it is well-established that denying a prisoner's grievances, by itself, is not the type of personal involvement required to state a constitutional violation.  *See, e.g., Lowe v. Matheney*, No. 2:13-cv-22416, 2015 WL 5795867 *9 (S.D. W. Va. Sept. 30, 2015) (inadequacy of allegations involving supervisory liability claim based upon denial of grievances); *see also*

*Larson v.* Meek, 240 F. App'x 777, 780 (10th Cir. 2007); *Ferris v. Jones*, No. 4:14-cv-454, 2015 WL 4668297, at *9 (N.D. Fla. Aug. 5, 2015).

In *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), the Fourth Circuit held that supervisors may be liable for the actions of their subordinates where the supervisor, by his own conduct, was deliberately indifferent to, or tacitly authorized or approved prior constitutional violations.  Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care."  *Id.* at 798 (*quoting Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)).  As further noted by the court in *Evans v. Chalmers*:

> [T]he Supreme Court explained in *Iqbal* that "a supervisor's mere knowledge" that his subordinates are engaged in unconstitutional conduct is insufficient to give rise to liability; instead, a supervisor can only be held liable for "his or her own misconduct."  [556 U.S. at 677.]

703 F.3d 636, 660-61 (4th Cir. 2013); *see also King v. Rubenstein*, 825 F.3d 206, 224 (4th Cir. 2016).

Because the plaintiff has failed to sufficiently establish any violation of his rights under either the Eighth of Fourteenth Amendments as a result of the disciplinary action taken against him, his claims against the Supervisory Defendants also fail.  The plaintiff has not alleged any misconduct by these defendants that rises to the level of a constitutional violation.

Furthermore, it is well settled that qualified immunity "shields government officials from liability for civil damages provided their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person."  *Meyers v. Baltimore Cty.*, 713 F.3d 723, 731 (4th Cir. 2013).  The following test

is used to determine whether an officer is entitled to qualified immunity: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right; and (2) was that right clearly established such that a reasonable person would have known that their conduct was unlawful. *See Saucier v. Katz*, 523 U.S. 194, 205 (2001); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). In *Pearson v. Callahan,* the Supreme Court held that a court may exercise its sound discretion to decide which prong of the inquiry to address first. 555 U.S. 223, 242 (2009); *see also Oliver v. Fiorino*, 586 F.3d 989, 905 (11th Cir. 2009).

Because the plaintiff has not sufficiently alleged any federal constitutional violations, under the first prong of the *Saucier* standard, the undersigned proposes that the presiding District Judge **FIND** that all of the defendants are entitled to qualified immunity on the plaintiff's claims against them.

### B.   Negligence claims

The Complaint specifically asserts that the defendants' were negligent. Negligence is a tort addressed under state law. In light of the finding that the Complaint fails to sufficiently state any federal claims and that there is no basis for diversity jurisdiction, the court may decline to exercise supplemental jurisdiction over the state law claim. *See* 28 U.S.C. § 1367(c). Nevertheless, should the presiding District Judge decide to exercise such jurisdiction, the undersigned will address the viability of the plaintiff's negligence claims.

In order to prove a state law claim of negligence, the plaintiff must demonstrate (1) that a defendant owed the plaintiff a duty; (2) that the negligent acts or omissions of the defendant breached that duty; and (3) that the plaintiff was proximately injured by the breach of such duty. *See Wheeling Park Comm'n v. Dattoli*, 787 S.E.2d 546, 551 (W. Va. 2016). The plaintiff's Complaint fails to specifically allege any duties owed to him by

each defendant. Moreover, even if he could establish the breach of any such duty by the conduct of the defendants, he cannot demonstrate any injury proximately caused thereby.

Furthermore, as addressed by the defendants in their Memoranda of Law, West Virginia law provides qualified immunity to public employees for discretionary acts taken in the scope of their employment. *Clark v. Dunn*, 465 S.E.2d 374 (W. Va. 1995). Thus, such immunity shields public officers from liability for negligence in the performance of their discretionary duties. Syl. Pt. 7, *W. Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751 (2014). In the absence of a showing that discretionary governmental acts violated clearly established laws of which a reasonable person would have known, "both the State and its officials or employees charged with such acts or omissions are immune from liability." *Id.*, Syl. Pt. 11. The *A.B.* court noted that, unless the plaintiff demonstrates that the acts or omissions of a defendant violated a clearly-established statutory or constitutional right or laws of which a reasonable person would have known, or were otherwise fraudulent, malicious or oppressive, qualified immunity should apply. *Id.* at 766.

In the instant case, the actions of the defendants appear to be discretionary in nature and the plaintiff has not alleged sufficient facts to overcome a finding that the defendants are entitled to qualified immunity. Again, the Complaint fails to set forth any clearly-established statutory or constitutional right that has been violated by the actions of the defendants. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state any actionable claim of negligence upon which relief can be granted by this court.

## RECOMMENDATION

For the reasons stated herein, the undersigned proposes that the presiding District Judge **GRANT** the defendants' Motions to Dismiss (ECF Nos. 56 and 59) and dismiss this matter from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the opposing party and Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

July 13, 2017

Dwane L. Tinsley
United States Magistrate Judge

21